**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 21-1892**

———————

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

COMMUNICATIONS WORKERS OF AMERICA, DISTRICT 2-13,

Intervenor,

v.

FRONTIER COMMUNICATIONS CORPORATION,

Respondent.

———————

**No. 21-1977**

———————

FRONTIER COMMUNICATIONS CORPORATION,

Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent,

COMMUNICATIONS WORKERS OF AMERICA, DISTRICT 2-13,

Intervenor.

———————————

On Application for Enforcement and Cross-Petition for Review of an Order of the National Labor Relations Board.  (09-CA-247015)

———————————

Submitted:  October 12, 2022                                    Decided:  December 7, 2022

———————————

Before KING, AGEE, and QUATTLEBAUM, Circuit Judges.

———————————

Application for enforcement granted, and cross-petition for review denied, by unpublished per curiam opinion.

———————————

**ON BRIEF:**  Jennifer Abruzzo, General Counsel, Peter Sung Ohr, Deputy General Counsel, Ruth E. Burdick, Deputy Associate General Counsel, David Habenstreit, Assistant General Counsel, Usha Dheenan, Supervisory Attorney, Brady Francisco-Fitzmaurice, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Petitioner/Cross-Respondent.  Ryan T. Sears, Washington, D.C., Christopher J. Murphy, MORGAN, LEWIS & BOCKIUS LLP, Philadelphia, Pennsylvania, for Respondent/Cross-Petitioner.  Joseph D. Richardson, WILLIG, WILLIAMS & DAVIDSON, Philadelphia, Pennsylvania, for Intervenor.

———————————

Unpublished opinions are not binding precedent in this circuit.

2

PER CURIAM:

Frontier Communications Corporation ("Frontier") petitions for judicial review of the May 2021 decision and order (the "Order") entered by the National Labor Relations Board (the "Board"), which found that Frontier had engaged in unfair labor practices, in contravention of Section 8(a)(1) and (5) of the National Labor Relations Act (the "NLRA"). The Board faulted Frontier for failing and refusing to bargain with the Communications Workers of America, District 2-13 (the "Union") — the certified bargaining representative for some 1,300 Frontier employees in West Virginia and Virginia — and for withholding information relevant to the Union's bargaining demands. The Board now seeks enforcement of its Order. As explained herein, and consistent with well-established precedent, we deny Frontier's petition for review and enforce the Order.

## I.

In 2013, Frontier discovered that it lacked a Form I-9 — the form used by the Department of Homeland Security to assess an individual's eligibility for employment in the United States — for nearly all Frontier employees, in violation of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359 (the "IRCA"). Accordingly, Frontier sought to obtain the mandated I-9 forms from its affected employees, including those represented by the Union. Following negotiations with the Union, Frontier agreed that its managers would only review the original versions of the employee identification documents necessary to complete the I-9 forms (instead of requiring copies of those documents); that any existing copies of such documents would be destroyed; and

3

that Frontier's managers would work with any Union members who had difficulty timely producing the requisite supporting documentation.

Frontier's 2013 efforts to come into compliance with the IRCA, however, were evidently unsuccessful. In 2019, after completing a "self-audit," Frontier found that it remained "massively noncompliant" with the IRCA's I-9 recordkeeping requirements, in that it lacked properly completed I-9 forms for more than 90% of its 16,400 employees. *See* Br. of Respondent 1. Thus, on July 19, 2019, Frontier sent an email to those many thousands of employees, requesting that they complete new I-9 forms by August 30, 2019. But this time — unlike in 2013 — Frontier did not engage the Union in discussions prior to directing Frontier employees to begin submitting new I-9 forms. After learning of Frontier's July email, the Union demanded to bargain over the details of the I-9 form completion process, seeking confirmation that Frontier's 2013 agreements would remain in place. The Union also requested a variety of information from Frontier pertaining to its bargaining demands, including the "specific deficienc[ies]" in its members' previously completed I-9 forms and the "current location and storage method" for those forms. *See* J.A. 978-79.[*]

Frontier promptly rebuffed the Union's requests on both fronts. Responding to numerous bargaining demands from the Union, Frontier maintained that it had no duty to negotiate over its decision to request new I-9 forms, given that it had no discretion as to

---

[*] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

4

whether to abide by the federal legal mandate. And because it perceived no duty to bargain, Frontier advised that it would not supply the requested information to the Union about its employees' existing I-9 forms. In response, the Union filed an unfair labor practice charge with the Board on August 22, 2019, and the Board's General Counsel subsequently issued a complaint alleging that Frontier's repeated refusals contravened the terms of the NLRA.

The issues were then tried before an administrative law judge (the "ALJ") in August 2020. By decision of October 14, 2020, the ALJ ruled that Frontier had committed unfair labor practices by (1) failing and refusing to provide the Union with notice of, and an opportunity to bargain over the effects of, its request for new I-9 forms, and by (2) refusing to provide the Union with the requested information regarding the pre-existing I-9 forms. The ALJ specifically explained that Frontier "had room to negotiate" over "the impact that the new I-9 form requirement would have on employees." *See* J.A. 443-44. The Board, for its part, affirmed the ALJ's decision by its May 2021 Order, and therein directed Frontier to bargain with the Union on request and to furnish the Union with its requested I-9 information in a timely manner. In August 2021, the Board applied to this Court for enforcement of its Order. Three weeks later, Frontier filed a cross-petition for review of the Order, and the Union was authorized to intervene in these proceedings in support of the Board.

II.

Our review of an order of the Board is "limited," insofar as we are obliged to uphold the Board's factual findings if — considering the record as a whole — they are supported

5

by "substantial evidence." *See Tecnocap, LLC v. NLRB*, 1 F.4th 304, 312 (4th Cir. 2021).

Moreover, "[i]f the Board's legal interpretations are rational and consistent with the

[NLRA]," then we will sustain them. *See Media Gen. Operations, Inc. v. NLRB*, 394 F.3d

207, 211 (4th Cir. 2005). Relevant here, Section 8 of the NLRA makes it an unfair labor

practice for an employer to "refuse to bargain collectively with the representatives of his

employees." *See* 29 U.S.C. § 158(a)(1), (5). That statutory duty to bargain requires the

employer to "confer in good faith with respect to wages, hours, and other terms and

conditions of employment," *id.* § 158(d), and also to provide its employees' representatives

with any information relevant to and reasonably necessary for the collective-bargaining

process, *see NLRB v. Acme Indus. Co.*, 385 U.S. 432, 435-36 (1967). Despite that general

rule, employers need not bargain over non-discretionary actions taken to comply with legal

obligations. *See, e.g.*, *Standard Candy Co.*, 147 NLRB 1070, 1073 (1964). Relying on

that principle, Frontier insists — as it has before — that because it had no choice but to

adhere to the IRCA's recordkeeping requirements, it was under no duty to bargain with the

Union over its request for new I-9 forms.

Frontier's seemingly straightforward position fails to account, however, for

longstanding decisions of the Board, this Court, and the Supreme Court establishing that

employers must bargain over the "effects," or impacts, that non-negotiable managerial

decisions may have on employees and their terms and conditions of employment. *See, e.g.*,

*First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 679-82 (1981); *Holly Farms Corp. v.

NLRB*, 48 F.3d 1360, 1368 (4th Cir. 1995); *Allison Corp.*, 330 NLRB 1363, 1365 (2000).

As the ALJ's decision explained, so-called "effects bargaining" requires that bargaining

6

representatives receive "pre-implementation notice" of an employer's legally mandated action and an opportunity to negotiate over any discretionary aspects of how the action will be carried out. *See* J.A. 442-43; *Good Samaritan Hosp.*, 335 NLRB 901, 902-04 (2001).

With that being so, Frontier is correct that its basic decision to adhere to federal law and obtain properly completed I-9 forms from all its employees fell outside of its duty to bargain with the Union. But the same is not true with respect to the finer points of that effort. *See Washington Beef, Inc.*, 328 NLRB 612, 612 n.2, 619-20 (1999) (resolving that, although an employer's decision to comply with the IRCA lies outside of its obligation to bargain, "the obligation encompasses bargaining over such peripheral matters as . . . the amount of time which will be given to the unit employees to establish that they possess authentic work documents" necessary for completion of an I-9 form). The ALJ and the Board correctly determined that Frontier had ample "room to negotiate" over the details of the I-9 form completion process — details such as whether employees would be required to submit copies of the personal identification documents required by the I-9 form; how long employees would be given to submit their documentation and complete their forms; and how Frontier would assist any employees who struggled to complete the process on time. *See* J.A. 444. Indeed, Frontier had bargained with the Union as to those precise matters when it collected new I-9 forms from its employees in 2013.

Importantly, those discretionary elements of Frontier's I-9 request are not extraneous, inconsequential details — they have direct "effects" on employees' terms and conditions of employment. The matter of whether Frontier managers would make copies of confidential employee identification documents, for example, raises genuine concerns

7

regarding employee privacy and, of course, successfully and timely completing an I-9 form is itself a literal condition of continued employment.  There can therefore be no doubt that Frontier was obliged to bargain with the Union over the details of the I-9 submission process.  And because Frontier had such a duty, it was likewise required to supply the information regarding the pre-existing I-9 forms that the Union requested — which information it has not disputed as being relevant to the Union's collective-bargaining role.  Accordingly, by failing to give the Union notice before seeking new I-9 forms from its employees, refusing to bargain over the I-9 process when the Union so requested, and again refusing to furnish the Union's requested relevant information, Frontier committed a series of unfair labor practices in contravention of Section 8 of the NLRA.  At bottom, we are satisfied that the challenged Order is supported by substantial evidence and fully consistent with applicable legal precedent.

## III.

Pursuant to the foregoing, we deny Frontier's petition for review and grant the Board's application for enforcement.

*APPLICATION FOR ENFORCEMENT GRANTED;*
*CROSS-PETITION FOR REVIEW DENIED*